UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| YADEIL FIGUEROA, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Case No. 3:12-cv-00982 (VAB) |
| | : |
| SCOTT SEMPLE, et al., | : |
| | : |
| Defendants. | : |

**RULING ON DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Yadeil Figueroa, filed this action *pro se* pursuant to 42 U.S.C. § 1983 seeking damages and declaratory and injunctive relief for injuries he sustained when a fellow inmate assaulted him.  He names as defendants Warden Scott Semple, Unit Manager Fargo, Correctional Officer Ginise, Correctional Officer Ostuno, Dr. M. Cartwright and Nurse S. Torre.[1] Initially, plaintiff sued all defendants in their individual and official capacities.  By ruling dated May 9, 2013, the Court dismissed all claims for money damages against the defendants in their official capacities and determined that the plaintiff's claims for failure to protect and deliberate indifference to mental health needs would proceed against the defendants in their individual capacities, and in their official capacities only to the extent that the plaintiff seeks declaratory or injunctive relief.  (Ruling and Order at 3, ECF No. 5.)  The defendants have moved for summary judgment on all claims.  For the reasons that follow, the defendants' motion is GRANTED.

---

[1] The plaintiff incorrectly spelled the names of three defendants in his complaint.  The Court will use the correct spellings: Unit Manager Fargo, Correctional Officer Ginise, and Nurse Torre.

1

**I.     Facts**[2]

Prior to January 8, 2012, the plaintiff and inmate Jose Aviles had shared a cell without incident for approximately three months at Garner Correctional Institution in Connecticut. (Defs.' L. R. 56(a)1 Stmt. ¶ 8, ECF No. 23.) On January 8, 2012, inmate Aviles attacked the plaintiff in their cell using a razor blade. (*Id.*, Ex. B at 5.) The plaintiff suffered lacerations to his arms, neck, and back. (*Id.*) In a witness statement made following the attack, the plaintiff stated that inmate Aviles had told the plaintiff a few days before the attack "how easy it could be to kill somebody." (*Id.* at 10.) The plaintiff stated that he had not taken the remark seriously. (*Id.*)

The plaintiff makes several allegations regarding the defendants' knowledge that he was at serious risk of harm from inmate Aviles, (*see* Compl. ¶¶ 55, 58-59), but has failed to submit evidence to support most of these allegations.

First, as to Warden Semple, the plaintiff alleges that on the Friday afternoon before the Sunday attack, he and inmate Aviles spoke with Warden Semple during a tour. (Compl. ¶ 31, ECF No. 1.) However, the plaintiff does not allege or offer evidence that he told Warden Semple that he was concerned that inmate Aviles might hurt him. Instead, he alleges that inmate Aviles told Warden Semple that his medication had been stopped and that he would not "make it to Monday." (*Id.* ¶ 34.) Warden Semple stated that he would speak with Aviles on Monday and

---

[2]     The facts are taken from the defendants' Local Rule 56(a)1 Statement and the exhibits submitted by both parties. *See* D. Conn. L. Civ. R. 56(a). Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement that contains separately numbered paragraphs corresponding to the movant's Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the movant. Each admission or denial must include a citation to an affidavit or other admissible evidence. In addition, the opposing party must submit a list of disputed factual issues. *See* D. Conn. L. Civ. R. 56(a)2-3.

Plaintiff has not filed the required Local Rule 56(a)2 Statement. Accordingly, the statements in the defendants' Local Rule 56(a)1 Statement are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 (providing that all material facts set forth in the Local Rule 56(a)1 Statement "will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)2."). Plaintiff was notified of this rule and the consequences of failing to submit a Local Rule 56(a)2 statement. (*See generally*, Notice to Pro Se Litigant, ECF No. 24.)

2

resolve the issue.  (*Id.*)  The plaintiff alleges that, as a result of this conversation, Warden Semple had "first hand knowledge" that plaintiff was at serious risk of harm.  (*See id.* ¶ 56.)  Warden Semple maintains that, to the best of his knowledge, the plaintiff never told him that he was afraid of being assaulted by inmate Aviles.  (Defs.' L. R. 56(a)1 Stmt., Ex. E ¶ 4.)

The plaintiff relies on several letters (the "Letters") to show that Warden Semple knew that the plaintiff was at risk of harm at the hands of inmate Aviles.  One is an undated letter from a social worker to Dr. Daniel Bannish of the Connecticut Department of Correction ("DOC").  (Pl.'s Opp. Mot. Summ. Judg. at 7, ECF No. 25.)  This letter notes that the social worker's office represented inmate Aviles, and describes a January 2009 incident in which inmate Aviles cut a cellmate with a razor.  (*Id.*)  The letter states that Aviles fears that he will harm or kill someone if he is housed with a cellmate in the future, and requests that Aviles "not be a candidate to have future cellmates."  (*Id.*)  There is no indication that this letter was forwarded to or received by Warden Semple or any other defendant.

Another letter, dated February 17, 2009 from the Connecticut Correctional Ombudsman and addressed to inmate Aviles at Northern Correctional Institute, responds to inmate Aviles's request for "a permanent single cell housing assignment because [he has] a 'blood fetish' and will harm any cell mate."  (*Id.* at 14.)  The letter notes that the matter was brought to the attention of "the warden"[3] but that the matter is within the discretion of the warden, supervisory staff, and mental health professionals.  (*Id.*)  There is no indication that this letter was forwarded to or received by Warden Semple or any other defendant.

Another letter, dated February 23, 2010 from the DOC and addressed to inmate Aviles at Corrigan-Radgowski Correctional Center, notes that, according to Warden Anthony Coletti, inmate Aviles was seen in February 2010 by a mental health unit and that unit recommended that

---

[3] The letter does not identify the warden.

Aviles continue his single cell status.  (*Id.* at 9.)  There is no indication that the letter was forwarded to or received by Warden Semple or any other defendant.

Another letter, dated April 11, 2011 from the DOC and addressed to inmate Aviles at Garner Correctional Institute, notes that the DOC "has been in contact with Warden Scott Semple regarding your request for a single cell.  According to Warden Semple, you have graduated from the Behavioral Engagement Unit (BEU) Program and will be subsequently transferred out of that unit.  Additionally, you will be placed on single cell status for two weeks as per the recommendation of the BEU team."  (Compl., Attachment A at 5, ECF No. 1.)  A copy of the letter was forwarded to Warden Semple.  (*See id.*)

Second, as to Defendant Fargo, the plaintiff alleges only that he notified Fargo that he "needed a cell change" because of inmate Aviles's "current situation."  (Compl. ¶ 29.).  Fargo maintains that the plaintiff never told him that he was afraid of being assaulted by inmate Aviles, and that he had no reason to believe that inmate Aviles would attack the plaintiff.  (Defs.' L. R. 56(a)1 Stmt., Ex. D ¶ 5.)

Third, as to Defendants Ginise and Ostuno, the plaintiff alleges that "at dinner time [he] went to both C/O Ostuno and Ginise and asked to speak to a social worker."  (*Id.* ¶ 35.)  Ginise and Ostuno notified the social worker in charge of the plaintiff's cell block.  (*Id.* ¶ 37.)  The plaintiff told Ginise and Ostuno that "he needed a cell change until Monday when . . . the warden will see inmate Aviles and Aviles hasn't been on his mental health medication for 5 days."  (*Id.* ¶ 39.)  The plaintiff alleges that Ginise and Ostuno told him that they were not giving cell changes, that "this is prison," and that the plaintiff could be placed in segregation if he chose not to "lock up."  (*Id.* ¶ 40.)   The plaintiff also asked Ginise and Ostuno to speak with the shift supervisor, but they "ignored" his request.  (*Id.* ¶ 38.)  The plaintiff asked Ginise a second time if he could

speak to the shift supervisor, but Ginise told the plaintiff that "night was over and to go to sleep." (*Id.* ¶ 43.) Finally, the plaintiff alleges that he informed defendants Ostuno and Ginise that inmate Aviles was "acting very unusual." (*Id.* ¶ 58.)

Defendants maintain that the plaintiff never told any staff that he was concerned that inmate Aviles might hurt him, and that if the plaintiff had told staff that he feared assault by inmate Aviles, he would have been moved to restrictive housing for his safety. (Defs.' L. R. 56(a)1 Stmt. ¶ 11-12.) The defendants note that the plaintiff had many opportunities each day to communicate his concerns. (*Id.* ¶ 13.)

As indicated by one of the Letters discussed above, inmate Aviles attacked a cellmate in January 2009. (Pl.'s Opp. Mot. Summ. Judg. at 7, ECF No. 25.) Warden Semple was aware of that attack. (Defs.' L. R. 56(a)1 Stmt., Ex. E ¶ 5.) However, inmate Aviles had not received any disciplinary charges for assault in the three years between that incident and the incident in question. (Defs.' L. R. 56(a)1 Stmt. ¶ 15.) Moreover, in 2011, inmate Aviles completed the Behavior Engagement Unit Program, which is designed to help inmates deal with potentially violent behavior. (*Id.*, Ex. E ¶ 6.)

## II. Procedural Background

The plaintiff's original complaint included copies of the Letters, copies of grievances that the plaintiff filed, and photographs of his injuries. (Compl. at 22-36.) In responding to the defendants' motion for summary judgment, the plaintiff merely stated that "the defendant's version of this matter is contradictory to my version," and re-submitted the same Letters, grievances, and photographs of his injuries without providing new, additional evidence to support the allegations in his complaint or rebut the allegations in the defendants' Local Rule 56(a)1 Statement and affidavits. (Pl.'s Opp. Mot. Summ. Judg. at 1, 5-14, ECF No. 25.)

The plaintiff's motion to appoint counsel was denied without prejudice in August 2014 because the plaintiff had made no recent attempts to find counsel. (Ruling on Mot. Appoint. Counsel at 1, ECF No. 26.) The Court's ruling noted that any renewed motion to appoint counsel must be accompanied by a summary of attempts to obtain counsel. (*Id.* at 2.) It also noted that the plaintiff had not filed a Local Rule 56(a)2 statement or memorandum opposing the defendants' motion for summary judgment. (*Id.*) The ruling directed the plaintiff to "file any supplemental response to the motion for summary judgment including a memorandum in opposition, a Local Rule 56(a)2 Statement, and any affidavits or other documentary evidence." (*Id.*) The plaintiff never renewed his motion to appoint counsel or supplemented his opposition.

### III.   Standard of Review

A motion for summary judgment may be granted only where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party may satisfy his burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets this burden, the non-moving party may not merely rest on allegations or denials in his pleading, but rather must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The non-moving party must present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). Merely verifying the allegations of the complaint in an affidavit, however, is insufficient to oppose a motion for summary judgment. *Zigmund v. Foster*, 106 F. Supp. 2d 352, 356 (D. Conn. 2000).

When reviewing the record, the court resolves all ambiguities and draws all permissible

factual inferences in favor of the party against whom summary judgment is sought. *Wright*, 554 F.3d at 266. If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the non-moving party, summary judgment is inappropriate. *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). However, the existence of a mere "scintilla" of evidence supporting the non-moving party's position is insufficient to defeat a motion for summary judgment. *Harvey v. Homebound Mortgage, Inc.*, 547 F.3d 158, 163 (2d Cir. 2008).

Where the party opposing summary judgment is proceeding on a *pro se* basis, the Court must read that party's papers liberally and interpret them "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (internal quotation marks and citation omitted). Yet even a *pro se* plaintiff cannot defeat a motion for summary judgment by relying merely on the allegations of a complaint. *See Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996). Rather, when confronted with evidence of facts that would support summary judgment in the defendant's favor, the plaintiff must come forward with evidence in admissible form that is capable of refuting those facts. *See* Fed. R. Civ. P. 56(e); *see also Jermosen v. Coughlin*, 877 F. Supp. 864, 867 (S.D.N.Y.1999) (*pro se* plaintiffs must present concrete evidence from which a reasonable jury could return a verdict in their favor in order to defeat summary judgment).

**IV.   Discussion**

The plaintiff asserts claims for failure to protect and deliberate indifference to his safety against defendants Semple, Fargo, Ginise and Ostuno. (*See* Compl. ¶§ 55, 57.) He also contends that defendants Cartwright and Torre were deliberately indifferent to his mental health needs. (*Id.* ¶ 62.)

### A.     Failure to Protect and Deliberate Indifference to Safety

The Eighth Amendment requires prison officials to make reasonable efforts to ensure inmate safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This duty includes protecting inmates from harm at the hands of other inmates. *Id.* at 833. However, "not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. To establish a constitutional violation, the prisoner must show that the conditions of his incarceration posed a substantial risk of serious harm and that the prison official was deliberately indifferent to his safety. *Id.* Deliberate indifference exists when the prison official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* at 837. Mere negligence does not amount to deliberate indifference. *Id.* at 835.

Although the injuries suffered by the plaintiff provide the Court with the benefit of hindsight, they do not show that, at the time of the incident in question, the defendants disregarded an excessive risk to the plaintiff's safety. *See Wise v. Ranck*, No. 1:07-CV-01899, 2008 WL 4861974, at *3 (M.D. Pa. Nov. 6, 2008) ("[D]eliberate indifference must be viewed from the prison official's perspective at the time in question, not with hindsight's perfect vision."). The plaintiff has not submitted any evidence showing that he told the defendants that he was concerned about being assaulted by inmate Aviles, or that the defendants actually drew the inference that the plaintiff was at a substantial risk of serious harm. *See Fair v. Weiburg*, No. 02 CV 9218 KMK, 2006 WL 2801999, at *5 (S.D.N.Y. Sept. 28, 2006) (granting summary judgment in inmate-on-inmate attack case where plaintiff never expressed fear or complaints about his safety to prison staff); *Ketterman v. City of New York*, No. 00 Civ. 1678 (NRB), 2001

8

WL 579757, at *6 (S.D.N.Y. May 30, 2001) (dismissing deliberate indifference claim in inmate-on-inmate attack case where plaintiff failed to allege that he informed prison official of a perceived risk of harm, or that any corrections officer was otherwise aware of substantial risk of harm to him); *Brown v. Picarelli*, No. 96CIV.1222 (RMB)(RLE), 2003 WL 1906180, at *5 (S.D.N.Y. Apr. 15, 2003) *report and recommendation adopted*, No. 96 Civ.1222 RMB RLE, 2003 WL 21297287 (S.D.N.Y. June 4, 2003) (granting summary judgment in inmate-on-inmate attack case where plaintiff did not inform any correction officer that he faced a threat of harm prior to assault). While the plaintiff's allegations were sufficient to state plausible claims and survive a motion to dismiss, (*see* Ruling and Order at 2, ECF No. 5), the plaintiff's failure to support those allegations with evidence is fatal to his claims at this stage. The defendants provided the *pro se* plaintiff with the required notice that failure to submit sworn affidavits and other evidence, and failure to respond to the defendants' Local Rule 56(a)1 Statement may result in the dismissal of his claims. (Notice to Pro Se Litigant, ECF No. 24.)

The plaintiff argues that Warden Semple had knowledge of the threat to his safety after the plaintiff and inmate Aviles spoke with him on Friday afternoon.[4] (Compl. ¶¶ 56.) However, the plaintiff's allegations of that conversation, which are unsupported by evidence, merely show that Warden Semple knew that inmate Aviles's medication had been stopped. There is no evidence that the plaintiff told Warden Semple that he felt that he was in danger, nor is there any evidence that Warden Semple inferred, from the fact that inmate Aviles's medication had been stopped, that the plaintiff was at a substantial risk of serious harm. The only evidence regarding

---

[4] The plaintiff did not pursue a theory of supervisory liability against Warden Semple, but rather alleged direct participation in the alleged constitutional violation on his part. Even if the plaintiff had pursued that theory, he failed to advance any evidence showing that Warden Semple failed to remedy a constitutional violation, created a policy or custom under which unconstitutional practices occurred, was grossly negligent in supervising subordinates, or failed to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

9

this conversation is Warden Semple's sworn affidavit, in which he states that, to the best of his knowledge, the plaintiff never told him that he was afraid of being assaulted by inmate Aviles. (Defs.' L. R. 56(a)1 Stmt., Ex. E ¶ 5.) Consequently, the Friday afternoon conversation does not raise a genuine dispute as to whether Warden Semple was aware of an excessive risk to the plaintiff's safety.

Likewise, the Letters do not show that Warden Semple or any of the other defendants knew of or inferred such a risk at the time of the incident. First, three of the Letters were not addressed to Warden Semple, and there is no evidence indicating that they were actually received by him or any other defendant. Second, three of the Letters were dated two to three years before the incident in question. The most proximate letter, which was sent to Warden Semple, was dated nearly nine months before the incident, and discussed the fact that inmate Aviles had graduated from a program intended to help inmates deal with their potentially violent behavior and would be placed on single cell status for only two weeks. (Compl., Attach. A at 5, ECF No. 1; Defs.' L. R. 56(a)1 Stmt., Ex. E ¶ 6.) During the nine months between that letter and the incident, the plaintiff and inmate Aviles housed together for three months without incident, and inmate Aviles did not receive any disciplinary tickets for assault. (Defs.' L. R. 56(a)1 Stmt. ¶¶ 8, 15.) Given these intervening facts, the Letters do not raise a genuine dispute that the defendants were aware of or inferred a substantial risk of serious harm at the time of the incident. *See Candelaria v. Coughlin*, No. 93 CIV. 3212 (RWS), 1997 WL 171256, at *10 (S.D.N.Y. Apr. 10, 1997) (letters regarding incidents and threats of violence were insufficient to put prison official on notice of substantial risk of harm to plaintiff by other inmates); *Baker v. Lehman*, 932 F. Supp. 666, 671 (E.D. Pa. 1996) (doubtful that one could infer excessive risk to inmate safety from an inmate's letter, written more than one year prior to inmate-on-inmate attack, requesting

separation from plaintiff to avoid being hurt).

Finally, the plaintiff never informed defendants Fargo, Ginise, or Ostuno that he feared for his safety. The plaintiff's asking defendant Fargo for a cell change because of inmate Aviles's "current situation" was insufficient to put Fargo on notice of a substantial risk to the plaintiff's safety.

Similarly, the plaintiff's allegations, unsupported by evidence, that he asked defendants Ginise and Ostuno for a cell change, asked to speak to a social worker, asked to speak to a shift supervisor, and stated that inmate Aviles was "acting very unusual" are insufficient to raise a genuine dispute as to whether Ginise and Ostuno were aware of an excessive risk to the plaintiff's safety. (Defs.' L. R. 56(a)1 Stmt., Ex. D ¶ 5.) There is no evidence that the plaintiff told Ginise and/or Ostuno that he wanted a cell change or to speak to a social worker or shift supervisor because he feared assault by inmate Aviles, or that he told Ginise and Ostuno that inmate Aviles's unusual behavior made him feel threatened or at risk of harm.

For the foregoing reasons, the defendants' motion for summary judgment is granted as to the plaintiff's failure to protect and deliberate indifference to safety claims.

> **B.**   **Deliberate Indifference to Serious Mental Health Needs**

The plaintiff claims that Dr. M. Cartwright and Nurse S. Torre acted with deliberate indifference to his serious mental health needs by not providing "adequate and immediate counseling" after the attack. (Compl. ¶¶ 54, 62.) Summary judgment is appropriate as to these claims because the plaintiff has alleged no conduct on the part of Nurse Torre,[5] and only alleges that Dr. Cartwright discontinued inmate Aviles's medication, (*see* Compl. ¶¶ 25, 34).

To prevail on a claim for deliberate indifference to a serious mental health need, the plaintiff must show both that his mental health need was serious and that the defendants acted

---

[5] The plaintiff alleges only that Nurse Torre worked with Dr. Cartwright. (Compl. ¶ 14.)

11

with a sufficiently culpable state of mind.  *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).  Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference.  *See id.*  Nor does a difference of opinion regarding what constitutes an appropriate response and treatment constitute deliberate indifference.  *See id.*

The seriousness of the plaintiff's mental health need is measured in objective terms.  "A condition is objectively serious if it 'pose[s] an unreasonable risk of serious damage to [a prisoner's] future health.'"  *Guilbert v. Sennet*, 235 F. App'x 823, 826 (2d Cir. 2007) (quoting *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (internal quotation marks omitted)).  The second part of the test is a subjective analysis.  The plaintiff must show that the defendants were subjectively reckless in denying mental health care.  *See Spavone v. New York State Dep't of Corr.*, 719 F.3d 127, 138 (2d Cir. 2013).  This mental state requires that the prison official act or fail to act while actually aware of a substantial risk that serious inmate harm will result.  *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).  The defendant must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."  *Farmer*, 511 U.S. at 837.

As of January 2012, following the attack, the plaintiff was receiving monthly counseling.  (Compl. at 25.)  Nonetheless, the plaintiff filed a grievance that month requesting additional individual counseling and requesting single cell status.  (*Id.*)  This evidence makes out nothing more than a disagreement about the treatment provided, which is not cognizable as deliberate indifference under the Eighth Amendment and section 1983.

Further, the plaintiff provides no evidence that Nurse Torre and Dr. Cartwright actually treated him or were responsible for his mental health treatment.  Absent such evidence, the plaintiff cannot state a cognizable claim for damages against them.  *See Hernandez v. Keane*, 341

F.3d 137, 144 (2d Cir. 2003) (explaining that deliberate indifference requires a showing of personal involvement) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'")). To the extent that the plaintiff argues that Dr. Cartwright's decisions with respect to inmate Aviles's medication proximately caused the attack, the plaintiff has offered no evidence that would support such speculation. Accordingly, the defendants' motion for summary judgment is granted as to the plaintiff's deliberate indifference claim for damages.

The plaintiff also seeks injunctive relief in the form of an order that he be housed in a single cell and not be transferred to a correctional facility without twenty-four mental health care. (Compl. ¶ 70.) The plaintiff has been discharged from the custody of the Department of Correction. Accordingly, any request for injunctive relief is denied as moot. *See Mawhinney v. Henderson*, 542 F.2d 1, 2 (2d Cir. 1976) ("In view of the fact that appellant is no longer incarcerated at Auburn, his request for an injunction restraining the officials at Auburn from violating his civil rights is moot."). Accordingly, the plaintiff's request for injunctive relief is dismissed pursuant to 28 U.S.C. § 1915A(b)(1) (authorizing district court to dismiss any complaint that fails to state a cognizable claim).

    C.    **State Law Claims**

Although the plaintiff lists state constitutional provisions in his complaint, he does not include any state law claims in the section of the complaint describing his legal claims. To the extent that the complaint may liberally be construed to assert any state law claims, the Court declines to exercise supplemental jurisdiction over those claims.

Supplemental or pendant jurisdiction is a matter of discretion, not of right. *See United*

*Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  Where all federal claims have been dismissed before a trial, state claims generally should be dismissed without prejudice and left for resolution by the state courts.  *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").  Because the Court has granted the defendants' motion for summary judgment on all of the plaintiff's federal claims, it declines to exercise supplemental jurisdiction over any remaining state law claims.

## V. Conclusion

The defendants' motion for summary judgment (ECF No. 21) is **GRANTED**.  Any request for injunctive relief is **DISMISSED** pursuant to 28 U.S.C. § 1915A.  The Court declines to exercise supplemental jurisdiction over any state law claims.

The Clerk is directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED**.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge

Dated at Bridgeport, Connecticut, this twenty-eighth day of May 2015.